Anthony N. Polselli, et al.
vs.                          Eq. No. 11122.
Felix P. Beauvais
Thomas Polselli
vs.                          Eq. No. 11114.
Felix P. Beauvais

November 29, 1932.

TANNER, J.   These are suits in equity brought to cancel two mortgages given as part security for the purchase price of a garage owned by the defendant.

The plaintiff, Anthony N. Polselli, had a garage which was not adapted to his business and was anxious to buy another.   He came to the defendant at two different times and tried to buy his garage.   Finally the defendant agreed to sell the garage to the plaintiff Polselli and his brother-in-law for $6,500, they paying therefor $2,000 in cash and giving a mortgage upon the garage for the balance.   The plaintiff, Thomas Polselli, father of Anthony, gave a mortgage on his own property as additional security.

The plaintiff Anthony and his brother-in-law and several other members of his family attempted to run the garage purchased from the defendant. They were not successful in running it and finally, several months later, tendered back to the defendant the key of the garage, claiming that they had been defrauded in the purchase of said garage and that there was a failure of consideration.

The most trifling ground alleged was that the defendant had misrepresented the number of automobiles kept on storage.   We do not think that this defense was clearly made out.   If there was any deficiency, it was very trifling.

The next ground was that the defendant misrepresented the value of the machinery, tools and other stock on hand.   It was alleged that he had stated them to be of the value of $3,000.

Upon the evidence, the garage was an extremely well equipped garage. The plaintiffs introduced a so-called expert to show that the value was less than $3,000.   We think it clearly appeared that this expert was not really an expert as to a number of the articles which he appraised and that his valuation is therefore unreliable.

The defendant, on the other hand, said that he hadn't made any such guarantee or statement but that he had merely told them that the equipment of the garage and stock had cost him about $11,000.   He also attempted an appraisal which was criticized by the plaintiffs, but as a matter of fact any of the statements as to value made by either side were more or less a matter of opinion and were given as such. Furthermore, the plaintiffs frankly stated that the value of the stock and equipment was a matter of little consequence to them; that what they really were after was to secure this well equipped garage and the business and goodwill appertaining thereto.

The plaintiffs claim that they were induced to purchase by representations of the defendant that he had been doing a $2,000 business a month and that the defendant had for the previous five months done $9,000 worth of business. The defendant, however, says that all he told them was that the business varied; that some months he made as high as $2,000 and other months he had made less sums, which he named.

We are inclined to think that the defendant's statement is the more probable one.   Upon the testimony, he didn't appear to be over anxious to sell and we doubt if he made any such specific statements as to value.   Of course, the plaintiffs could only offer, in disproof of any statements that he made as to the value of his business, the amounts which they were able to collect while they had it.   During the first month that the plaintiffs were in the place, they do admit that they collected $968.30.   The next month, however, it

dropped to $605.89; the following month $785.50, and the last month $452.53.

It does appear that the defendant had run this garage successfully for 12 years and been able to pay $250 a month rent. It therefore seems quite probable that any statement that he made as to his earnings was correct. We think it does appear from the testimony that the plaintiffs did not properly manage the garage and that their declining profits were due to this. It is testified by the defendant and his witnesses that Anthony Polselli was the only experienced mechanic in the plaintiffs' outfit and that he himself said that he was tired of trying to support three families and that he wasn't able himself to do all the repair work; no one else understood the repair business. It is also testified that at the end of the period of occupation, he proposed to the defendant that he and the defendant should jointly run the garage.

The last ground alleged for cancellation is that the defendant agreed to deliver 70 shares of stock, being all the stock of the corporation under which the defendant ran his business. It appears that the defendant tried to deliver this stock but was unable to find it. It does appear, however, that the plaintiffs, with a layman's usual disregard of legal technicalities, proceeded to organize themselves as officers of the corporation and that they made the mortgage upon the stock and the garage upon the authority of the vote of the corporation. We think that they were clearly at least a *de facto* corporation and that they received the value for which the mortgage was given and are, therefore, upon the well known principles, estopped from disputing the validity of this mortgage. It appears that, for the remaining time during which the plaintiffs occupied the garage and ran it as a corporation, there was no further insistence upon the delivery of the stock, which might easily have been compelled and which probably would have been attended to if there had been insistence. The statutory requirement of application to the Court for an order of cancellation was not attended to but there was no real failure of consideration. The corporation got the full value of the garage and its equipment and the good-will of the business. It got the equitable title to the garage and could have got the legal title.

See Sec. 10, Chap. 250, Gen. Laws of R. I. 1923.

We therefore feel that the corporation waived the transfer of the certificate which is only an indicia of the shares of stock, in any event.

Upon this view of the bill brought by Anthony Polselli, et al., we think the bill brought by Thomas Polselli must follow the same course. If there was consideration for the mortgage given by Thomas Polselli.

We think, therefore, that, subject to the condition that the plaintiffs may have a conveyance of the legal title to the shares of stock, including cancellation of the lost certificate, and upon consideration that the shares of stock are now apparently utterly valueless by reason of the insolvency of the corporation and the sale of its assets upon execution, both bills must be dismissed.

John Di Libero, Solicitor for Anthony N. Polselli, et al.

Robert Brown and Knauer & Fowler, Solicitors for Thomas Polselli, et al.

Edward F. McElroy, Solicitor for Felix Beauvais, et al.